CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, | **Case No**. |
| Plaintiff, | |
| v. | |
| | **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act. |
| **Anita J. Merlo;** **Central Valley Motor Parts, Inc.,** a Georgia Corporation; and Does 1-10, | |
| Defendants. | |

Plaintiff Scott Johnson complains of Anita J. Merlo; Central Valley Motor Parts, Inc.; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1.  Plaintiff is a California resident with physical disabilities. Plaintiff is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

2.  In September 2014, Defendant Anita J. Merlo was the real property

Complaint

owner of the building/parcel located at or about 910 E. Weber Avenue, Stockton, California.

3.   In October 2014, Defendant Anita J. Merlo was the real property owner of the building/parcel located at or about 910 E. Weber Avenue, Stockton, California.

4.   Currently, Defendant Anita J. Merlo is the real property owner of the building/parcel located at or about 910 E. Weber Avenue, Stockton, California.

5.   In September 2014, Defendant Central Valley Motor Parts, Inc. was the business owner of the Napa Auto Parts located at or about 910 E. Weber Avenue, Stockton, California ("Napa").

6.   In October 2014, Defendant Central Valley Motor Parts, Inc. was the business owner of Napa.

7.   Currently, Defendant Central Valley Motor Parts, Inc. is the business owner of Napa.

8.   Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

9.   This Court has subject matter jurisdiction over this action pursuant to

Complaint

28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

10. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

11. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

12.  Napa is a facility open to the public, a place of public accommodation, and a business establishment.

13. Parking is one of the facilities, privileges and advantages offered by Defendants to patrons of Napa.

14. In September 2014, there were 2 parking spaces at Napa marked and reserved for persons with disabilities.

15. In September 2014, Defendants had failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the Americans with Disabilities Act Accessibility Guidelines (ADAAG).

16. In September 2014, the parking spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

17. In September 2014, the access aisle between the parking spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

18. In September 2014, whether by apathy or neglect, Defendants had allowed the paint at the parking spaces marked and reserved for persons with disabilities to fade beyond recognition.

Complaint

19. In September 2014, the access aisle serving the parking spaces marked and reserved for persons with disabilities did not have the required blue border.

20. In September 2014, the access aisle serving the parking spaces marked and reserved for persons with disabilities did not have the required "NO PARKING" lettering.

21. In September 2014, the pavement at the parking spaces marked and reserved for persons with disabilities was not maintained and, as a result, was warped and wavy.

22. In September 2014, the pavement conditions of the parking spaces marked and reserved for persons with disabilities caused cross slopes in excess of 2%.

23. In September 2014, the pavement at the access aisle serving the parking spaces marked and reserved for persons with disabilities was not maintained and, as a result, was warped and wavy.

24. In September 2014, the pavement conditions of the access aisle serving the parking spaces marked and reserved for persons with disabilities caused cross slopes in excess of 2%.

25. In September 2014, the parking spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

26. In September 2014, the access aisle serving the parking spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

27. In October 2014, there were 2 parking spaces at Napa marked and reserved for persons with disabilities.

28. In October 2014, Defendants had failed to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

29. In October 2014, the parking spaces marked and reserved for persons

Complaint

with disabilities measured less than 216 inches in length.

30. In October 2014, the access aisle between the parking spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

31. In October 2014, whether by apathy or neglect, Defendants had allowed the paint at the parking spaces marked and reserved for persons with disabilities to fade beyond recognition.

32. In October 2014, the access aisle serving the parking spaces marked and reserved for persons with disabilities did not have the required blue border.

33. In October 2014, the access aisle serving the parking spaces marked and reserved for persons with disabilities did not have the required "NO PARKING" lettering.

34. In October 2014, the pavement at the parking spaces marked and reserved for persons with disabilities was not maintained and, as a result, was warped and wavy.

35. In October 2014, the pavement conditions of the parking spaces marked and reserved for persons with disabilities caused cross slopes in excess of 2%.

36. In October 2014, the pavement at the access aisle serving the parking spaces marked and reserved for persons with disabilities was not maintained and, as a result, was warped and wavy.

37. In October 2014, the pavement conditions of the access aisle serving the parking spaces marked and reserved for persons with disabilities caused cross slopes in excess of 2%.

38. In 2014, the parking spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

39. In 2014, the access aisle serving the parking spaces marked and

Complaint

reserved for persons with disabilities had running slopes greater than 2%.

40. Currently, there are 2 parking spaces at Napa marked and reserved for persons with disabilities.

41. Currently, Defendants fail to maintain the parking spaces marked and reserved for persons with disabilities in compliance with the ADAAG.

42. Currently, the parking spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

43. Currently, the access aisle between the parking spaces marked and reserved for persons with disabilities measures less than 216 inches in length.

44. Currently, whether by apathy or neglect, Defendants have allowed the paint at the parking spaces marked and reserved for persons with disabilities to fade beyond recognition.

45. Currently, the access aisle serving the parking spaces marked and reserved for persons with disabilities does not have the required blue border.

46. Currently, the access aisle serving the parking spaces marked and reserved for persons with disabilities does not have the required "NO PARKING" lettering.

47. Currently, the pavement at the parking spaces marked and reserved for persons with disabilities is not maintained and, as a result, is warped and wavy.

48. Currently, the pavement conditions of the parking spaces marked and reserved for persons with disabilities cause cross slopes in excess of 2%.

49. Currently, the pavement at the access aisle serving the parking spaces marked and reserved for persons with disabilities is not maintained and, as a result, is warped and wavy.

50. Currently, the pavement conditions of the access aisle serving the parking spaces marked and reserved for persons with disabilities cause cross slopes in excess of 2%.

51. Currently, the parking spaces marked and reserved for persons with

Complaint

disabilities have running slopes greater than 2%.

52. Currently, the access aisle serving the parking spaces marked and reserved for persons with disabilities has running slopes greater than 2%.

53. Transaction counters are another one of the facilities, privileges and advantages offered by Defendants to patrons of Napa.

54. In September 2014, although there was a transaction counter lower than 36 inches in height and accessible to wheelchair users, Defendants did not make this counter available to Plaintiff.

55. Instead, in September 2014, Defendants assisted Plaintiff at a higher, inaccessible counter.

56. In October 2014, although there was a transaction counter lower than 36 inches in height and accessible to wheelchair users, Defendants did not make this counter available to Plaintiff.

57. Instead, in October 2014, Defendants assisted Plaintiff at a higher, inaccessible counter.

58. Currently, although there is a transaction counter lower than 36 inches in height and accessible to wheelchair users, Defendants do not make this counter available to disabled patrons.

59. Instead, Defendants currently assist disabled patrons at a higher, inaccessible counter.

60. Restrooms are another one of the facilities, privileges, and advantages offered by Defendants to patrons of Napa.

61. And, although he did not personally confront the following barriers, Plaintiff alleges that the restrooms at Napa are not accessible to persons with disabilities.

62. Plaintiff alleges that the sink faucet hardware in the restroom is a twisty-style knob that requires tight grasping or twisting of the wrist to operate.

63. Plaintiff alleges that the plumbing underneath the sink is not wrapped

Complaint

to protect against burning contact.

64. Plaintiff alleges that there is no clear floor space in front of the paper towel dispenser because it is wall-mounted directly above a garbage can.

65. Plaintiff alleges that there is no clear floor space in front of the toilet paper, which is set on top of the toilet.

66. Plaintiff alleges that the toilet paper dispenser is not located on the wide wall, below the grab bar and within 7-12 inches of the front edge of the toilet seat.

67. Plaintiff alleges that the flush control for the toilet is not mounted on the wide or open side of the toilet.

68. Additionally, on information and belief, Plaintiff alleges that the toilet seat cover dispenser is mounted such that its highest operable parts are more than 54 inches above the floor.

69. Plaintiff visited Napa three times in September 2014.

70. Plaintiff visited Napa twice in October 2014.

71. The plaintiff personally encountered these violations and they denied him full and equal access.

72. These barriers caused Plaintiff great difficulty and frustration.

73. Plaintiff would like to return and patronize Napa but will be deterred from visiting until the defendants cure the violations.

74. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

75. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular

Complaint

barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

76. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

77. Plaintiff is and has been deterred from returning and patronizing Napa because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize Napa as a customer once the barriers are removed.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42  U.S.C. section 12101, et seq.)

78. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

79. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any

Complaint

place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

        a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

        b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

        c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

80. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by state or local laws or regulations. See 36

Complaint

C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2. The access aisle must extend the full length of the parking space(s) it serves. 2010 Standards § 502.3.2. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. *Id.* It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space. *Id.* Signs must be posted so that they cannot be obscured by a vehicle parking in the space. *Id.* An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. *Id.* Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. *Id.* Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (♿) that is 36 inches by 36 inches. *Id.* And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. *Id.*

81. Here, the failure to provide a disabled parking space no less than 216 inches in length is a violation of the ADA.

82. Here, the failure to provide an access aisle no less than 216 inches in length is a violation of the ADA.

83. Here, the failure to properly mark the disabled parking space is a

11

Complaint

violation of the ADA.

84. Here, the failure to paint a blue border around the access aisle is a violation of the ADA.

85. Here, the failure to mark the access aisle with the required "NO PARKING" lettering is a violation of the ADA.

86. Here, the parking simply failed to comply.

87. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

88. Here the failure to provide level parking is a violation of the ADA.

89. A place of public accommodation must make reasonable modifications in policies, practices, or procedures, to provide its services to persons with disabilities.  28 C.F.R. 36.302(a). Thus, it is not simply enough to provide an accessible feature; a business must make use of it. 28 C.F.R., Part 36, Appendix C, § 36.211.

90. Here, the failure to conduct Plaintiff's transaction at the lowered, accessible counter is a violation of the ADA.

91. Sink hardware must have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 1991 Standards § 4.24.7 and 4.27.4.

92. Here the failure to provide such sink hardware is a violation of the ADA.

93. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4;

Complaint

2010 Standards §606.5.

94. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

95. Clear floor space that allows a forward or a parallel approach by a person using a wheelchair shall be provided at controls, dispensers, receptacles, and other operable equipment. 1991 Standards § 4.27.2; 2010 Standards § 309.2.

96. Here, the failure to provide such floor space is a violation of the law ADA.

97. The toilet paper dispenser must be located on the wide wall, below the grab bar and within 12 inches of the front edge of the toilet seat or, if the 2010 Standards govern, then within 7-9 inches of the front edge of the toilet seat. 1991 Standards § 4.17.3; 2010 Standards § 604.7.

98. Here, the failure to properly locate the toilet paper dispenser is a violation of the ADA.

99. Flush controls for accessible toilets must be mounted on the open or wide side of the toilet, i.e., not the side nearest the adjacent side wall. 1991 Standards § 4.16.5; 2010 Standards § 604.6.

100.    Here, the failure to properly locate the flush control is a violation of the ADA.

101.    If controls, dispensers, receptacles or other equipment is provided in a restroom, they must be on an accessible route and be mounted so that their highest operable parts are no greater than 54 inches above the floor. 1991 Standards § 4.22.7; 4.27.

102.    Here, the failure to ensure that the paper towel dispenser met the height requirement is a violation of the ADA.

103.    A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. §

13

Complaint

36.211(a).

104.     Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the ADA.

105.     Given its location and options, Napa is a location that the plaintiff will continue to desire to patronize but he has been and will continue to be discriminated against due to the lack of accessible facilities.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

106.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

107.     Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

108.     Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort, or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, *i.e.,* a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

109.     Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest frustration and physical personal injury greater than the amount of the statutory damages.

14

Complaint

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.


Dated: March 21, 2016                    CENTER FOR DISABILITY ACCESS


                                         By: _____
                                         Mark Potter, Esq.
                                         Attorneys for Plaintiff

15

Complaint